**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CLEVELAND MEDICAL DEVICES INC., an Ohio Corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RESMED INC., a Delaware Corporation,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. _____

**JURY TRIAL DEMANDED**

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Cleveland Medical Devices Inc. ("CleveMed") files this Complaint for Patent Infringement and Demand for Jury Trial against ResMed Inc. ("Defendant" or "ResMed") and alleges as follows:

**THE PARTIES**

1.　　　CleveMed is an Ohio corporation with its principal place of business at 4415 Euclid Ave, Cleveland, Ohio 44103.

2.　　　ResMed is a Delaware corporation with its principal place of business at 9001 Spectrum Center Boulevard, San Diego, California 92123.  ResMed can be served through its agent for service of process, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware, 19808.

**JURISDICTION AND VENUE**

3.　　　This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*  This court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

5.     This Court has personal jurisdiction over ResMed because ResMed is incorporated within this District and has committed acts of direct and indirect infringement in this District, including through selling infringing products and services in this District.  Further, ResMed has submitted to the jurisdiction of this Court, in at least two other instances involving a claim of patent infringement. *See New York University v. ResMed, Inc*., C.A. No. 21-0813*,* D.I. 14 (D. Del. Sept. 30, 2021); *Cleveland Medical Devices, Inc. v. ResMed, Inc*., C.A. No. 22-0794, D.I. 183 at ¶¶3-5 (D. Del. Nov. 3, 2023).  Given the above, this Court's exercise of jurisdiction over ResMed in this action would be reasonable.  Further, because ResMed is a Delaware corporation, Delaware is a convenient forum for the resolution of the parties' dispute.

## CLEVEMED'S INNOVATIONS

6.     In 1990, Robert N. Schmidt founded CleveMed with the core mission to lead the world in maximizing clinical quality and patient access to diagnostics and particularly to sleep disorder testing and therapy through innovative technologies and services.  CleveMed recognized that a better solution was needed to diagnose the nearly one in seven people in the United States who suffer from some type of chronic sleep disorder that negatively impacts their health and quality of life so that they can begin their path to treatment.

7.     CleveMed spent years researching and developing services and devices aimed at providing portable sleep testing and treatment solutions to the over 32 million patients in the United States suspected of suffering from undiagnosed and untreated obstructive sleep apnea ("OSA").  OSA is one of the most prevalent sleep disorders that leads a sufferer to experience excessive sleepiness that can deteriorate their quality of life and negatively impact their

2

employment, higher earning and job promotion opportunities, education, and personal life. It also impacts workplace and driving safety, jeopardizing not only people with OSA but those around them as well. To provide a cohesive solution to this long-standing problem, CleveMed focused its research and development efforts on technologies that provide testing and therapy solutions that can be used at home: technologies that were not possible previously.

8.     After developing its innovative technologies, CleveMed offered for sale its sleep diagnostic devices designed to treat those suffering from breathing related sleep disorders, such as OSA. These diagnostic technologies provided both the subject and health care provider with real-time or near-real-time metrics that were incredibly useful for addressing the subject's symptoms at different points in time.

9.     Around 2007, CleveMed began development of portable home sleep testing solutions that were later offered commercially as its SleepView product line. The SleepView product line detects sleep-disorder breathing and subjects' movements while they sleep at home. As the test is conducted entirely in a subject's home, the data generated is more accurate and meaningful because the devices account for environmental conditions that may affect a subject's sleep at home and eliminate any disturbances that may result from a subject sleeping away from home. These devices communicate with software and a web portal which receives and analyzes the physiological data recorded during the home sleep test and compile the results in reports to be used in diagnosing a sleeping disorder. The web portal also interprets the physiological data recorded and creates reports that can be transmitted to other medical professionals.

10.     By utilizing this innovative technology, CleveMed led the way in services and devices for home sleep disorder testing that are portable and easy-to-use at home. The novel technologies also streamline operations for healthcare providers and offers cost-efficient testing

solutions for customers.  CleveMed's inventions filled a long-felt need for a more effective delivery of care solutions that can be administered in a subject's home and included improved outcomes for sufferers of sleep related breathing disorders in their treatment and overall health.

11.    In recognition of its innovation and expertise, the United States Patent and Trademark Office ("USPTO") awarded CleveMed more than 37 patents that disclose, *inter alia*, novel technologies for sleep apnea diagnosis and follow-up, as well as therapy procedures and applications.  These technologies are now central to the outcome-based initiatives the healthcare industry is initiating to manage chronic diseases.

## CLEVEMED'S ASSERTED PATENTS

12.    On October 1, 2019, the USPTO issued U.S. Patent No. 10,426,399 (the "'399 Patent"), entitled "Method and Device for In-Home Sleep and Signal Analysis."  The '399 Patent lists Hani Kayyali, Craig A. Frederick, Christian Martin, Robert N. Schmidt, and Brian Kolkowski as its inventors and states that it was assigned to Cleveland Medical Devices Inc.  Attached hereto as Exhibit 1 is a true and correct copy of the '399 Patent.

13.    The '399 Patent generally discloses methods for conducting home sleep tests.  In particular, it relates to collecting physiologic and kinetic data from a subject, preferably via an in-home data acquisition system, while the subject attempts to sleep at home.

14.    On February 23, 2021, the USPTO issued U.S. Patent No. 10,925,535 (the "'535 Patent"), entitled "Method and Device for In-Home Sleep and Signal Analysis."  The '535 Patent lists Hani Kayyali, Craig A. Frederick, Christian Martin, Robert N. Schmidt, and Brian Kolkowski as its inventors and states that it was assigned to Cleveland Medical Devices Inc.  Attached hereto as Exhibit 2 is a true and correct copy of the '535 Patent.

15.     The '535 Patent generally discloses systems for conducting at-home sleep testing that has a kinetic sensor and at least three sensors to be applied to a subject that record physiological and kinetic events occurring while a patient sleeps and software that identifies physiological and technological events in the data indicative of a sleeping disorder and that analyzes the data.

16.     On July 20, 2021, the USPTO issued U.S. Patent No. 11,064,937 (the "'937 Patent"), entitled "Method and Device for In-Home Sleep and Signal Analysis."  The '937 Patent lists Hani Kayyali, Craig A. Frederick, Christian Martin, Robert N. Schmidt, and Brian Kolkowski as its inventors and states that it was assigned to Cleveland Medical Devices Inc. Attached hereto as Exhibit 3 is a true and correct copy of the '937 Patent.

17.     The '937 Patent generally discloses systems for remote sleep testing using (a) a nasal cannula or facemask, (b) a respiratory effort belt sensor, (c) a fingertip pulse oximeter, (d) a portable interface box that has a processor for digitizing data and memory for storing the data, (e) a database that is remote for receiving the collected data, and (f) software that can analyze and identify events indicative of a sleeping disorder and (g) can transfer the collected data and/or identify physiological and technological events.

18.     On July 24, 2018, the USPTO issued U.S. Patent No. 10,028,698 (the "'698 Patent"), entitled "Method and Device for Sleep Analysis."  The '698 Patent lists Craig A. Frederick, Hani Kayyali, Robert N. Schmidt, and Brian Kolkowski as its inventors and states that it was assigned to Cleveland Medical Devices Inc.  Attached hereto as Exhibit 4 is a true and correct copy of the '698 Patent.

19.     The '698 Patent is generally directed toward methods for remote sleep analysis and diagnosis, that involve applying at least two sensors to a subject that connect to an interface

box that can collect and transmit data for medical personnel in a remote location from the subject, and the data is analyzed to identify physiological and technological events to medically diagnose the patient.

20.     On December 21, 2021, the USPTO issued U.S. Patent No. 11,202,603 (the "'603 Patent"), entitled "Method and Device for Sleep Analysis."  The '603 Patent lists Craig A. Frederick, Hani Kayyali, Robert N. Schmidt, and Brian Kolkowski as its inventors and states that it was assigned to Cleveland Medical Devices Inc.  Attached hereto as Exhibit 5 is a true and correct copy of the '603 Patent.

21.     The '603 Patent is generally directed toward sleep diagnostic systems and methods of remote sleep analysis and diagnosis involving sensors that can measure or derive the subject's airflow or snore, respiratory effort and blood oxygenation and analyze the data for a medical professional.

22.     On February 1, 2022, the USPTO issued U.S. Patent No. 11,234,637 (the "'637 Patent"), entitled "Method and Device for In-Home Sleep and Signal Analysis."  The '637 Patent lists Hani Kayyali, Craig A. Frederick, Christian Martin, Robert N. Schmidt, and Brian Kolkowski as its inventors and states that it was assigned to Cleveland Medical Devices Inc.  Attached hereto as Exhibit 6 is a true and correct copy of the '637 Patent.

23.     The '637 Patent generally discloses systems for conducting home sleep analysis of a subject using devices to obtain airflow data, respiratory effort data, blood oxygenation data, and body position data, which can transmit the data and has software that identifies events indicative of a sleeping disorder.

24.     CleveMed owns all rights, title, and interest in and to the '399 Patent, '535 Patent, '937 Patent, '698 Patent, '603 Patent, and '637 Patent (collectively "the Asserted Patents" or "HST Patents").

25.     SleepView is marked with the Asserted Patents in compliance with 35 U.S.C. § 287.  Exs. 1-6; *see also, e.g.*, Ex. 7; Ex. 8.

26.     All of the Asserted Patents are valid and enforceable.  The Asserted Patents disclose and specifically claim inventive concepts that represent significant improvements over conventional systems.  Specifically, each of the Asserted Patents describes various techniques, enhancing the ability of medical professionals to conduct a remote sleep test while the subjects sleep at their homes or another remote environment.  By allowing the testing and treatment to be conducted in a subject's home environment or outside a traditional sleep laboratory, the claimed inventions increase the quality and accuracy of the subject's diagnosis and treatment.  Furthermore, these systems and methods reduce the burden on both the subject and the clinician.

27.     The HST Patents disclose specific methods and systems that go beyond combining generic components to perform conventional activities.  The claimed inventions improve the functionality and capabilities of computers and processors.  They do so by enabling the detection and recording of different breathing disorders that occur while a subject sleeps at home or a location remote to a sleep lab, as well as the transfer of that recording data to locations running software and using a database (now sometimes known as the "cloud") that can automatically analyze, score, and present the recording data in an unconventional manner to highlight specific events indicative of sleep breathing disorders.  They further reduce the footprint of the testing devices, making the device truly wearable and portable, as well as easy

for the user to apply.  This results in increased access and a more accurate diagnosis for the subject and an efficient and streamlined work platform for medical professionals.

28.    The HST Patents include specific, non-conventional steps and concepts rooted in computer technology that make the claimed inventions concrete and non-abstract.  For example, certain claims of the HST Patents variously recite: attaching to the subject and connecting to the pressure sensors within the wireless portable testing device, a nasal cannula, a pulse oximeter, and a respiratory effort belt and sensor; simultaneously recording and storing the physiological data collected by at least those sensors; transmitting the physiological data collected to a remote database with a computer processor running software to analyze the recorded and stored data, determine the severity of the subjects' sleep breathing disorder, and transmit the results and determinations of the analyzed data to a location remote from the test site.  These steps cannot be simultaneously conducted by a human or by a human with an acceptable level of accuracy.

29.    The claims of the HST Patents are not routine or conventional in the art because at the time of their filing, the conventional sleep testing methods involved using devices and systems located within a sleep lab or medical facility.  In fact, at the time of filing for the earliest HST Patents, there was one general method for diagnosing sleep apnea: use of a questionnaire and an all-night polysomnography evaluation in a sleep lab that could then be followed by an all-day test, such as the Multiple Sleep Latency Test.  This method is time consuming and provided limited results, which are problems solved by the HST Patents, and due to subjects sleeping in a familiar location, the results of the methods and systems disclosed and claimed in the HST Patents are more representative of the subjects' actual sleep disorders.

30.    In addition, the claims are rooted in computer technology as they specifically disclose systems and methods for efficiently and accurately conducting a home sleep test,

8

analyzing the outcomes of that test, and sharing those results with others in the medical community to produce a more accurate diagnosis.  Thus, the claims of the HST Patents recite specific steps to accomplish the desired result and go beyond simply claiming a result.

31.    Accordingly, the inventions of the HST Patents allow for a new kind of system that was not previously possible, enabling an in-depth home sleep test and analysis of multiple data points that can be stored and shared with members of the medical community.

**RESMED'S PRODUCTS**

32.    ResMed makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services, including but not limited to, its sleep solutions utilizing devices and software technologies to provide at-home or remote sleep-disordered breathing or apnea testing (the "Accused Products").

33.    On May 1, 2025, ResMed announced that it acquired VirtuOx, a Florida based company that is "a leading independent diagnostic testing facility (IDTF)" that "provides diagnostic services for sleep, respiratory and cardiac conditions."  *See* Ex. 9 at 1-2; Ex. 10 at 1-2; *see also* Ex. 11 at 1-2.  VirtuOx now operates as a "fully owned subsidiary of Resmed following the transaction" under its existing VirtuOx brand for the near term.  Ex. 11 at 2.

34.    ResMed's acquisition of VirtuOx was prompted by the sleep diagnostic testing "bottleneck" in the U.S. as ResMed expects that an "avalanche" of patients will seek testing.  Ex. 10 at 2.  VirtuOx provides sleep diagnostic testing devices to a patient's home and offers coaching and support to the patient through the setup and completion of the test.  *Id.*

35.    Through VirtuOx, ResMed offers two infringing solutions: the ApneaLink Air Solution and the Alice NightOne Solution (collectively "the HST Solutions" or "VirtuOx Solutions").  The VirtuOx Solutions both use "type III HSAT (home sleep apnea test) devices"

that "record four channels of information: respiratory effort, pulse, oxygen saturation, and nasal flow." Ex. 12 at 3-4; Ex. 13 at 1-6; Ex. 14 at 1-10.

36.     The HST Solutions use software and data management platforms that they provide to its customers, such as AirView and VirtuOx's proprietary software platform ("Sleepifi"). Each of these platforms receive data from the devices, and display and transfer it to various parties, such as customers who are home medical equipment providers, medical professionals, and subjects who want the data. *See* Ex. 15; Ex. 16 at 5-6 (identifying Sleepifi as a "Home sleep apnea testing software, device, and logistics solution").

37.     The HST Solutions have a pulse oximeter manufactured by NONIN Medical ("NONIN") that ResMed sells and offers for sale. Ex. 17 at 5 (showing NONIN oximeter components as part of the "ApneaLink Air complete kit. Additionally, the HST Solutions utilize the VPOD VeriSleep product which is a chain of custody product used for gathering pulse oximetry and ensuring that the intended patient is the one taking the test. Ex. 18; Ex. 19 at 1-2.

38.     ResMed also utilizes Brightree to further monetize the data it captures from its devices as the industry moves from a "fee-for-service" model to an "outcomes based reimbursement model." ResMed accomplishes this by integrating its AirView platform with the platform they provide through Brightree. Ex. 20 at 1; *see also* Ex. 21 at 2 (Advanced Analytics from Brightree automatically runs reports and analyzes data); Ex. 22 at 1-4 (showing Brightree integrates with sleep testing data reports and can provide these reports to medical professionals); Ex. 23 at 1-2 (announcing the integration of AirView and Brightree platforms).

39.     In early 2016, ResMed acquired Brightree, further "expanding ResMed's offering to customer[s] of its sleep apnea humidifiers and other devices." Ex. 24 at 1-2.

**RESMED'S APNEALINK AIR SOLUTION**

40.    ResMed's accused ApneaLink Air Solution products are ResMed's ApneaLink Air device, ApneaLink Software and the AirView Cloud Platform.  The below is an image of the ApneaLink Air device.



Ex. 25 at 1; Ex. 17 at 2-5.

41.    The ApneaLink Air device, which subjects wear around their torso while they sleep at home (as shown below), is used to detect technological and physiological events indicative of OSA, central sleep apnea, and/or Cheyne-Stokes respiration.



Ex. 26 at 2;

The following table shows a list of all default event types automatically detected by the ApneaLink program and displayed in the signal curves:

| Event type | Abbreviation | Channel |
|---|---|---|
| Unclassified apnea | UA | Flow |
| Obstructive apnea | OA | Flow |
| Mixed apnea | MA | Flow |
| Central apnea | CA | Flow |
| Hypopnea | H | Flow |
| Flow limitation | FL | Flow |
| Snoring | Sn | Snoring |
| Inspiratory flow | If | Flow |
| Flow limitation and snoring | FS | Flow |
| Baseline saturation | Bs[1] | Saturation |
| Desaturation | Ds[1] | Saturation |
| Invalid data | ID | Flow, battery, snoring, saturation, pulse |
| Start of evaluation | S | Flow, effort, snoring, saturation, pulse |
| End of evaluation | E | Flow, effort, snoring |
| Exclusion from analysis | Ae | Flow, effort, battery, snoring, saturation |
| Missing oximeter finger sensor/XPod | Ms[1] | Saturation, pulse |
| Signal too small | Sts | Flow, effort |
| Cheyne-Stokes | CSR | Flow |

1.   Only for recordings with pulse oximetry

Ex. 27 at 26 (table showing "a list of all default event types automatically detected by the ApneaLink program and displayed in the signal curves," including physiological events (i.e. various types of apneas and breathing metrics) and technological events (i.e. invalid data, missing sensors, and insufficient signals)).

42.    The ApneaLink Air device comes as part of a kit provided by ResMed that includes at least the device, a nasal cannula, a belt and respirator effort sensor, a pulse oximeter, batteries, instructions, a USB cable, and a software CD for installation on a computer.  The standard Nonin pulse oximeter can be replaced with VirtuOx's VPOD VeriSleep kit which attaches a chain of custody device to the pulse oximeter, ensuring that the intended patient is the one performing the test and not another person.  Ex. 19 at 1-2.  The VPOD VeriSleep is marketed as "currently compatible with NONIN equipped HST devices" such as ApneaLink Air.  *Id.* at 1.

ApneaLink Air Complete Kit



Ex. 17 at 3; *id.* at 5 (listing the software CD as part of the ApneaLink Air complete kit); Ex. 28 at 2 (showing the three sensors, nasal cannula, respiratory effort belt, and a fingertip pulse oximeter); Ex. 27 at 3 (same); Ex. 13; Ex. 19.

43.    The ApneaLink Air device has at least internal batteries, non-volatile digital memory, a processor, a transceiver, pressure sensors that connect to the nasal cannula and respiratory effort sensor, and a kinetic sensor.

## ApneaLink Air Technical Specifications

| Recorder | |
|---|---|
| Enhanced hardware | |
| EasySense respiratory effort sensor | |
| Oximetry | |
| Light indicators | |
| - Test complete indicator | |
| - Respiratory flow indicator | |
| - Effort sensor connection indicator | |
| - Oximetry connection indicator | |

| Signal Recording | |
|---|---|
| Respiratory effort | |
| Respiratory flow | |
| Snore | |
| Blood oxygen saturation | |
| Pulse | |
| Battery voltage | |

| Download application |
|---|
| PC download |

| Internal battery |
|---|
| AAA alkaline batteries |

| Internal memory |
|---|
| Recording period: 48 hours |
| Internal clock |

| Dimensions |
|---|
| Recorder: 62 x 102 x 30 mm (2.4" x 4" x 1.2") |
| Pulse oximeter: 53 x 20 x 15 mm (2.1" x 0.8" x 0.6") |
| Recorder weight: 66 g (2.3 oz) |

Ex. 17 at 6 (showing the internal memory, effort sensor, batteries, and signal recordings); Ex. 27 at 9 (discussing the pressure sensors and their connections to the nasal cannula and effort sensor); *id.* at 18 (discussing data transfer for the ApneaLink Air); *id.* at 61-62 (showing the sensor for determining body position and movement).

44.     The ApneaLink Air device connects the nasal cannula and respiratory effort sensor to their respective pressure sensors via an air port.  The ApneaLink Air device also connects with the pulse oximeter.

**Connecting the nasal cannula and the effort sensor**

 

1. Insert the connector end of the nasal cannula into the nasal cannula connector on the device. Turn clockwise until the connector is secure.

2. Insert the connector end of the effort sensor into the effort sensor connector on the device. Turn clockwise until the connector is secure.

\*       \*       \*



3. Attach the oximeter to the oximeter
   connector on the device by pushing
   it on.

Ex. 27 at 7.



**Device**

The ApneaLink Air device has the following lights, connectors and button:

1 Test complete light

2 Nasal cannula connector and accessory light

3 Power button

4 Oximeter connector and accessory light

5 Effort sensor connector and accessory light

*Id.* at 4 (showing the portable patient interface box adapted to connect the at least three sensors to the patient).

45.      ResMed provides instructions for how the nasal cannula, respiratory effort sensor and belt, and pulse oximeter are applied to the subject.  Ex. 28 at 4-6 (showing how to properly apply the respiratory effort sensor, the nasal cannula, and pulse oximeter); Ex. 13; Ex. 18.

46.      The ApneaLink Air device records information on subjects' respiratory effort using the respiratory effort sensor, their pulse and oxygen saturation with the pulse oximeter, their nasal flow with the nasal cannula, and body position with a kinetic sensor.

**Device, pulse oximeter and effort sensor**

| Signal recording | Respiratory flow |
|---|---|
| | Respiratory effort |
| | Blood oxygen saturation |
| | Pulse |
| | Body position |
| | Battery voltage |

Ex. 27 at 60 (showing signal recordings and body position measurement sensor configuration);

Ex. 17 at 6.

47.    The ApneaLink Air device has a transceiver for transmitting the data collected

from the sensors to a computer running the ApneaLink Software and/or AirView.

**Downloading data from the device**

1. Plug the USB cable into the mini USB connector on the device and into an available USB port of your computer.
2. Run the ApneaLink program.
3. Click **Download ApneaLink** .

*Notes:*

- *If the device was not allocated to a patient during customisation, the download procedure is interrupted and a patient record card appears.*
- *Data transfer and analysis are complete when the report is displayed.*
- *Each recording needs up to 15 MB free computer hard disk space. Before downloading, ensure there is enough space available. The available space is displayed in the status bar of the ApneaLink program.*
- *The download procedure may take up to five minutes.*
- *Recordings shorter than ten seconds are not stored.*
- *For recordings with less than 60 minutes of valid data, the analysis time is considered too short for performing a reliable screening result. A note is posted on the report: "Attention: Evaluation period too short!". Any data that is captured by the device can be manually scored.*
- *If there are several recordings on the device, all the recordings are downloaded and analysed, and a report is produced for each. The report for the longest recording is displayed automatically. The other recordings and reports are also available in the database. All recordings that are transferred during a download have the same patient data.*
- *If the data has been downloaded successfully, both the recording and the patient data in the device are deleted automatically.*

Ex. 27 at 18 (describing a USB transceiver for uploading the collected data), *id*. at 19 (describing

downloading and displaying collected data (recordings) from the device), *id*. at 47 (describing

recordings, which "are accessible on your computer via USB connection").

16

48.     Upon information and belief, ResMed will support VirtuOx's use of ApneaLink Software and AirView, in addition to Sleepifi.  Within Sleepifi, the data received is automatically analyzed and scored, providing detailed views of respiratory events, oxygen saturation and pulse.  Sleepifi is also capable of generating reports and sharing the data received and analyzed with clinical users found in different locations.  In Sleepifi, the data is analyzed, severity levels are calculated, and reports are generated.  These reports can then be accessed by and shared with other members of the medical community, such as physicians, hospitals, and home care provider customers.  Ex. 16 at 4-5 (describing VirtuOx's Sleepifi platform as receiving the transmitted patient biometric data where it is compiled into "meaningful reports that enable physicians to diagnose and treat patients"); Ex. 29 (VirtuOx detailed home sleep test report showing apnea events, oxygen saturation and pulse); Ex. 30 (VirtuOx summary report showing sleep analysis results); Ex. 31 (showing the medical interpretation report of the results obtained and analyzed from the home sleep test).

49.     ApneaLink Software automatically analyzes the received data to determine a number of sleep disorder related events including "AHI [apnea-hypopnea index], flow limitation and snoring and later automatically generates a simple, easy-to-interpret report with a color-keyed AHI or Risk Indicator [among other indices such as for respiratory effort and oxygen saturation] for the clinician to review."  Ex. 17 at 4; Ex. 27 at 16-52.



Ex. 17 at 2.

Ex. 17 at 4.

50.    ApneaLink Air Software allows for transfer of the received and analyzed data from the ApneaLink Air device to a remote location.  Ex. 27 at 47-52 (explaining how to use ApneaLink Software to archive, export, and email generated reports and received signal recording data).

51.    ApneaLink Air also sends data to AirView.  AirView is ResMed's "cloud-based solution for managing patients with sleep apnea."  Within AirView, the data received is automatically analyzed and scored "provid[ing] detailed views of respiratory events and oxygen saturation."  AirView is also capable of generating reports and sharing the data received and analyzed with clinical users found in different locations.  In AirView, the data is analyzed, severity levels are calculated, and reports are generated.  Other members of the medical community can then access these reports.  AirView also connects ResMed device data to systems used by physicians, hospitals, and home care provider customers such as Brightree and U-Sleep.

## AirView - enabling efficient and secure access to patient therapy.

AirView is a secure cloud-based solution from ResMed for patient home testing and therapy management in both sleep and ventilation patients. It allows timely remote access to home sleep tests as well as to sleep and ventilation therapy and device information. You can securely share information and collaborate to help optimise patient management.

Ex. 32 at 2-3 (showing AirView's therapy management and reports for sleep devices);



Ex. 33 at 1-2;



Ex. 26 at 2.

52.    Within AirView, data received from ApneaLink Air is automatically scored and "provides detailed views of respiratory events and oxygen saturation." AirView is also capable of sharing the data received from ApneaLink Air and the generated reports with clinical users found in different locations. Ex. 32 at 2; Ex. 34 at 1-2 (showing AirView integrates with Brightree); Ex. 23 at 1-3 (showing AirView "integrates directly with Brightree").

### RESMED'S ALICE NIGHTONE SOLUTION

53.    ResMed's accused Alice NightOne Solution is a home sleep testing solution that comes with the Alice NightOne device and the Sleepifi platform. The Alice NightOne device is a home sleep testing device that a subject wears around their torso while they sleep at home. Alice NightOne detects technological and physiological events indicative of a sleep related breathing disorder.



Ex. 35 at 1; Ex. 14 at 4 ("Buckle the Alice NightOne around your chest").

54.    The Alice NightOne device comes as part of a kit provided by ResMed that includes at least the device, a nasal cannula, respirator effort belt, pulse oximeter, batteries, and instructions. In addition, the pulse oximeter can be replaced with VirtuOx's VPOD VeriSleep if chain of custody testing is required. Ex. 19.



Ex. 14 at 2; Ex. 35 at 3.

55.    The Alice NightOne device has at least internal batteries, non-volatile digital memory, a processor, a transceiver, pressure sensors that connect to the nasal cannula and respiratory effort sensor, and a kinetic sensor.

**Specifications**

| | |
|---|---|
| Total channels | Seven, plus optional therapy channels |
| Recorded channels | Flow, snore, thoracic effort, $SpO_2$, pulse rate, body position, pleth; plus optional therapy channels depending on therapy device and mode |
| Body position reporting | Supine, prone, right side, left side, upright |
| Good Study Indicator reporting | Displays quality and quantity of signals recorded, allowing clinicians to identify/correct poor signals |
| Data storage | 4 gigabyte internal memory |
| Communication | USB to PC cable, wireless communication to Bluetooth-enabled Philips Respironics devices |
| Power requirements | Two AA (1.5V) alkaline batteries or two AA (1.2V) rechargeable batteries with at least 2400mAh capacity |
| Oximetry sampling rate | 62.5 Hz |
| Dimensions | 4.07" L X 0.99" W X 2.67" H (10.34 cm X 2.51 cm X 6.78 cm) |
| Weight | Approximately 3 oz. (84 grams); not including sensors or batteries |
| Easy to clean | Choice of mild soapy water, Isopropyl alcohol (70%), DisCide®, CaviCide® or EnviroCide® |
| Device warranty | Two years |

Ex. 36 at 2.

56.     Alice NightOne connects the nasal cannula to a pressure sensor via an air port. The ApneaLink Air device also connects a respiratory effort belt with a sensor and has a preconnected pulse oximeter.  Ex. 14 at 3-4 (showing connection and application of the respiratory effort belt, nasal cannula, and pulse oximeter); Ex. 35 at 4-6 (same).  ResMed provides instructions for how the nasal cannula, respiratory effort belt, and pulse oximeter are to be applied to the subject.  *Id.*

57.     Alice NightOne records information on a subject's respiratory effort using the respiratory effort belt, their pulse and oxygen saturation with the pulse oximeter, their nasal flow with the nasal cannula, and body position with a kinetic sensor.  Ex. 36 at 1-2 (Alice NightOne records "flow, snore, thoracic effort, SpO2, pulse rate and body position.  Body position is recorded via its built in Body Position sensor).

58.     Alice NightOne has a transceiver for transmitting the data collected from the sensors to a computer running the Sleepifi platform.  Ex. 36 at 1 (showing a USB cable connection for Alice NightOne); Ex. 16 at 5-6 (identifying Sleepifi as a "Home sleep apnea testing software, device, and logistics solution").

59.     Upon information and belief, ResMed will support VirtuOx's use of AirView in addition to Sleepifi for the Alice NightOne Solution.  Within Sleepifi, the data received is automatically analyzed and scored providing detailed views of respiratory events, oxygen saturation and pulse.  Sleepifi is also capable of generating reports and sharing the data received and analyzed with clinical users found in different locations.  In Sleepifi the data is analyzed, severity levels are calculated, and reports are generated.  These reports can then be accessed by and shared with other members of the medical community, such as physicians, hospitals, and home care provider customers.  Ex. 16 at 4-5 (describing VirtuOx's Sleepifi platform as

receiving the transmitted patient biometric data where it is compiled into "meaningful reports that enable physicians to diagnose and treat patients"); Ex. 29 (VirtuOx detailed home sleep test report showing apnea events, oxygen saturation and pulse); Ex. 30 (VirtuOx summary report showing sleep analysis results); Ex. 31 (showing the medical interpretation report of the results obtained and analyzed from the home sleep test).

60.     AirView is ResMed's "cloud-based solution for managing patients with sleep apnea." Within AirView, the data received is automatically analyzed and scored "provid[ing] detailed views of respiratory events and oxygen saturation." AirView is also capable of generating reports and sharing the data received and analyzed with clinical users found in different locations. In AirView, the data is analyzed, severity levels are calculated, and reports are generated. Other members of the medical community can then access these reports. AirView also connects ResMed device data to systems used by physicians, hospitals, and home care provider customers such as companies like VirtuOx. Ex. 32 at 2-3 (showing AirView's therapy management and reports for sleep devices); Ex. 33 at 1-2; Ex. 26 at 2.

61.     Within AirView, data received from ApneaLink Air is automatically scored and "provides detailed views of respiratory events and oxygen saturation." AirView is also capable of sharing the data received from ApneaLink Air and the generated reports with clinical users found in different locations. Ex. 32 at 2; Ex. 34 at 1-2 (showing AirView integrates with Brightree); Ex. 23 at 1-3 (showing AirView "integrates directly with Brightree").

## RESMED'S KNOWLEDGE OF CLEVEMED'S PATENTS

62.     ResMed is aware of the Asserted Patents because CleveMed has a pending case in this Court regarding the Asserted Patents. CleveMed filed suit against ResMed in June 2022,

asserting the Asserted Patents against ResMed's ApneaLink Solution. *See Cleveland Medical Devices Inc. v. ResMed, Inc.*, C.A. No. 22-0794-JLH, D.I. 1 (D. Del. June 16, 2022).

63.     Additionally, CleveMed is informed and believes that ResMed internally monitors CleveMed's IP portfolio.  On March 14, 2023, CleveMed received U.S. Patent No. 11,602,284, titled "Devices and Methods for Sleep Disorder Diagnosis and Treatment," which is a child of U.S. Patent No. 10,076,269 asserted against ResMed in C.A. No. 22-0794-JLH.  Less than one week after its issuance, ResMed filed for declaratory judgement of non-infringement through its wholly owned subsidiary, ResMed Corp. *See ResMed, Corp. v. Cleveland Medical Devices Inc.*, No. 3:23-cv-00500-TWR-JLB, D.I. 1 (S.D. Cal. Mar. 20, 2023); *id.* at Ex. 1.  That case was ultimately transferred to N.D. Ohio.  Subsequently, CleveMed counterclaimed against ResMed Corp., alleging infringement of U.S. Patent No. 11,602,284 and five other additional patents, including one patent direct towards home sleep apnea diagnostic testing. (U.S. Patent No. 11,690,512).

64.     CleveMed is informed and believes that, despite ResMed's notice and knowledge of the Asserted Patents and CleveMed's patented technology, ResMed made the deliberate decision to acquire and sell products and services that it knew infringes CleveMed's Asserted Patents. Despite litigating the Asserted Patents since 2022, ResMed recently acquired a healthcare information technology company, VirtuOx.  VirtuOx is a virtual testing platform that offers diagnostic sleep testing to patients. Ex. 11 at 1.  VirtuOx advertises that it has served over six million patients and has partnerships with over a quarter million referring physicians and 4,000 durable medical equipment providers. Ex. 16 at 1.  The acquisition of VirtuOx not only expanded ResMed's HST distribution but also expanded its diagnostic testing solutions beyond just ApneaLink Air, to also include the infringing Alice NightOne.  Ex. 12 at 3-4.  Thus, ResMed

had knowledge of the Asserted Patents and knew or should have known it was infringing them when it deliberately decided to expand its HST portfolio with VirtuOx.

65.    CleveMed is informed and believes that ResMed has undertaken no efforts to avoid infringement of the Asserted Patents, despite ResMed's knowledge and understanding that its products and services infringe these patents.  Thus, ResMed's infringement of Asserted Patents is willful and egregious, warranting enhancement of damages.

66.    CleveMed is informed and believes that ResMed knew or was willfully blind to CleveMed's patented technology.  Despite this knowledge and/or willful blindness, ResMed has acted with blatant and in egregious disregard for CleveMed's patent rights with an objectively high likelihood of infringement.

67.    ResMed has been and is now infringing, and will continue to infringe, the Asserted Patents in this Judicial District and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the Accused Products.  In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, or both, ResMed also indirectly infringes all the Asserted Patents by instructing, directing, and/or requiring others, including its customers, purchasers, and users, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, or both, of the Asserted Patents.

<u>**COUNT I**</u>
**(Direct Infringement of the '399 Patent)**

68.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

69.    ResMed has infringed and continues to infringe at least Claim 1 of the '399 Patent in violation of 35 U.S.C. § 271(a).

70.    ResMed's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

71.    ResMed's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of CleveMed.

72.    ResMed's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of ResMed's products and services incorporating the HST solution described in the '399 Patent, which includes, but is not limited to, the accused VirtuOx Solutions (the "'399 Accused Products").

73.    CleveMed is informed and believes ResMed directs and controls the methods in the claims and obtains benefits from the control of the system as a whole.  CleveMed is informed and believes ResMed conditions participation in the infringing activity and establishes the manner or timing of that performance, as described below, by instructing and encouraging users to use the '399 Accused Products in an infringing manner.  ResMed and its customers, partners, purchasers, and/or users put the article of manufacture and methods described in the claims into service to the benefit of ResMed's ability to further enhance its sleep therapy capabilities.  *See*, *e.g.*, Ex. 20 at 1-2; Ex. 11.

74.    The '399 Accused Products embody the patented invention of the '399 Patent and infringe the '399 Patent because through their use, ResMed provides a method for conducting home sleep testing.  For example, ResMed provides a subject with the ApneaLink Air and Alice NightOne devices which are portable patient interface boxes worn around the subject's torso, a nasal cannula or facemask to measure airflow, a respiratory effort belt sensor to measure the

respiratory effort of the subject, and a fingertip pulse oximeter for measuring the oxygenation of the subject. *See supra* at ¶¶ 43-49, 56-60.

75.     ApneaLink Air and Alice NightOne comprise a battery, at least one kinetic sensor for measuring body position, a nonvolatile digital memory, a pressure transducer, an air port adapted for connecting the nasal cannula or facemask to the pressure transducer within the interface box and releasable connectors to connect and disconnect the respiratory effort belt sensor and fingertip pulse oximeter. *See supra* at ¶¶ 45-48, 57-60.

76.     ApneaLink Air and Alice NightOne apply and connect the nasal cannula or facemask, the respiratory effort belt, and the fingertip pulse oximeter to the subject, and the interface box to the subject's torso. *See supra* at ¶¶ 45-48, 57-60.

77.     ApneaLink Air and Alice NightOne measure and collect data through the interface box of the airflow, respiratory effort, body position, or orientation and oxygenation of the subject while the subject attempts to sleep at home. *See supra* at ¶¶ 49, 60.

78.     ApneaLink Air and Alice NightOne digitize and store the collected data from the subject in the nonvolatile digital memory of the interface box. *See supra* at ¶ 46 (showing ApneaLink Air's internal memory); ¶ 58 (Good Study Indicator showing signals recorded to memory).

79.     The ApneaLink Air and Alice NightOne transfer the collected data to a location remote from the subject's home. *See supra* at ¶¶ 50-55, 61-64.

80.     The '399 Accused Products additionally use a computer or a processor that runs AirView and/or ApneaLink Software, and Sleepifi at the remote location for analyzing the transferred collected data to identify and draw attention to physiological or technological events in the data indicative of a sleeping disorder. *See supra* at ¶¶ 51-55, 62-64.

81.     The ApneaLink Software, AirView, and Sleepifi provide for further analysis of the transferred collected data and/or the identified physiological and technological events in the data at the remote location to determine whether the subject suffers from a sleeping disorder. For example, the ApneaLink Software has a Re-analyze tool "that repeats the analysis of a recording based on the set analysis parameters" and "modif[ies] the report, the patient record or the records (waveform data)." AirView also allows a user to customize the types of reports generated. *See supra* ¶¶ 51-55, 62-64; Ex. 27 at 21; Ex. 33 at 1-2.

82.     ResMed's infringement of the '399 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

83.     CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology at least as early as November 2019, but certainly by June 2022. *See* ¶¶ 65-73. ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights. ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

84.     ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '399 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

## <u>COUNT II</u>
### (Indirect Infringement of the '399 Patent)

85.     CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

86.     CleveMed is informed and believes ResMed has induced infringement of at least Claim 1 of the '399 Patent under 35 U.S.C. § 271(b). Further, CleveMed is informed and

believes ResMed has also contributorily infringed at least Claim 1 of the '399 Patent under 35 U.S.C. § 271(c).

87.     CleveMed is informed and believes ResMed had knowledge of the '399 Patent and the '399 Accused Products' infringement of the Asserted Patents because in November 2019, CleveMed informed ResMed that CleveMed received Notices of Allowance for the '399 Patent and its associated families.  Further, in June 2022, CleveMed brought suit against ResMed asserting the same Accused Patents here.  *See* ¶¶ 65-73.

88.     CleveMed is informed and believes ResMed has induced infringement of the '399 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, partners, purchasers, and users to perform one or more of the steps of the method claims either literally or under the doctrine of equivalents.  All the elements of the claims are used by either ResMed, its customers, partners, purchasers, and/or users or some combination thereof.  CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is inducing others to infringe by practicing, either themselves or in conjunction with ResMed, one or more claims of the '399 Patent, including Claim 1.  *See supra* at ¶¶ 36-40.

89.     CleveMed is informed and believes ResMed knowingly and actively aided and abetted the direct infringement of the '399 Patent by instructing and encouraging its customers, purchasers, partners, and/or users to meet the elements of the '399 Patent with the Accused Products, despite knowing or remaining willfully blind to the fact that the encouraged acts caused infringement.  Such instructions and encouragement includes, but are not limited to, providing the HST Solutions to customers with instructions and guidance on using the Accused Products in an infringing manner, advising third parties to use the '399 Accused Products in an infringing manner through direct communications; training and support contracts, sales calls

between ResMed employees and its customers; directing users, distributors, partners, and manufacturers how to install and configure the Accused Products; and by advertising and promoting the use of the '399 Accused Products in an infringing manner, including the material cited herein and above in the direct infringement allegations.  Further, ResMed distributes user instructions, clinical guides, release notes, webinars, guidelines, videos, manuals, white papers, and trainings to third parties on how the '399 Accused Products must be used and shows them being used in an infringing manner.

90.    CleveMed is informed and believes ResMed contributorily infringes the '399 Patent pursuant to 35 U.S.C. § 271(c) because it has provided software such as AirView, ApneaLink Software, and Sleepifi as well as computer systems with software installed such as the ApneaLink Air device and the Alice NightOne, that act as a material component of the claims of the '399 Patent.  In particular, CleveMed is informed and believes ResMed knows that its products are particularly suited to be used in an infringing manner and that ResMed is aware that its products are not staple articles suitable for substantial non-infringing use.  CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is contributing to the direct infringement of one or more claims of the '399 Patent by its customers, partners, purchasers, and users, including Claim 1.

91.    In particular, CleveMed is informed and believes ResMed has at least provided the '399 Accused Products to others as home sleep testing devices and computer technologies and these products are a material part and/or component of the claims of the '399 Patent. ResMed knows that its products are particularly suited to be used on, or in combination with ResMed's HST Solutions and computer technologies and that these products are made and adapted for this use, even if some of these components are not sold by ResMed with, or as part

of, the '399 Accused Products.  In fact, in many cases, the '399 Accused Products can only function when used with these computer technologies.  For example, ResMed markets the ApneaLink Air and ApneaLink Air Software together, stating "ApneaLink Air software provides clinicians access to a more in-depth view of their patients' recordings."  Ex. 17 at 2.  Further, ResMed markets the ApneaLink Air and AirView together, stating, "[t]est results from the ApneaLink Air are saved to a secure database in the cloud [AirView] giving your sleep lab online access anytime and improving collaboration across your business."  Ex. 26 at 3.  ResMed also advertises use of the ApneaLink Air and Alice NightOne as working with Sleepifi and VPOD VeriSleep.  *See supra* at ¶¶ 38-40.

92.     CleveMed is informed and believes ResMed has knowingly and actively contributed to the direct infringement of the '399 Patent by its manufacture, use, offer to sell, sale, and importation of the '399 Accused Products together with its customers, partners, purchasers, and/or users to meet the elements of the '399 Patent, as described above and incorporated by reference here.

93.     ResMed's indirect infringement of the '399 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

94.     ResMed's indirect infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

95.     CleveMed is entitled to injunctive relief, damages and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285.

96.     ResMed has had knowledge of CleveMed's '399 Patent since at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.  ResMed's actions are willful,

blatant and in egregious disregard for CleveMed's patent rights.  ResMed's infringement has

caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed

will continue to suffer damage and irreparable injury unless and until such infringement is

enjoined by this Court.

97.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of

infringement of the '399 Patent, justifying an award to CleveMed of increased damages under 35

U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

**COUNT III**
**(Direct Infringement of the '535 Patent)**

98.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth

herein, the allegations of the preceding paragraphs, as set forth above.

99.    ResMed has infringed and continues to infringe at least Claim 8 of the '535 Patent

in violation of 35 U.S.C. § 271(a).

100.    ResMed's infringement is based upon literal infringement or infringement under

the doctrine of equivalents, or both.

101.    ResMed's acts of making, using, importing, selling, and/or offering for sale

infringing products and services have been without the permission, consent, authorization, or

license of CleveMed.

102.    ResMed's infringement includes, but is not limited to, the manufacture, use, sale,

importation and/or offer for sale of ResMed's products and services incorporating the HST

solution described in the '535 Patent, which includes, but is not limited to, the accused

ApneaLink Air Solution (the "'535 Accused Products").  To the extent any components of the

claimed systems are provided by ResMed's customers, ResMed directly infringes by acting as

33

the final assembler of the infringing system. ResMed configures the infringing system that requires the use of the infringing components. *See, e.g.,* Ex. 27 at 5-15.

103. CleveMed is informed and believes ResMed directs and controls the systems and methods in the claims and obtains benefits from the control of the system as a whole. CleveMed is informed and believes ResMed conditions participation in the infringing activity and establishes the manner or timing of that performance, as described below, by instructing and encouraging users to use the '535 Accused Products in an infringing manner. ResMed and its customers, partners, purchasers, and/or users put the article of manufacture and methods described in the claims into service to the benefit of ResMed's ability to further enhance its sleep therapy capabilities. *See*, *e.g.*, Ex. 20 at 1-2; Ex. 11.

104. The '535 Accused Products embody the patented invention of the '535 Patent and infringe the '535 Patent because they function as a system for conducting an at-home sleep analysis. For example, the ApneaLink Air is a portable interface box worn on a subject's torso that connects to at least three sensors, a nasal cannula or facemask for measuring airflow of the subject, a respiratory effort belt for measuring respiratory effort, and a fingertip pulse oximeter for measuring oxygenation of the subject while they sleep or attempt to sleep. *See supra* at ¶¶ 43-49.

105. ApneaLink Air comprises a battery, at least one kinetic sensor for measuring body position, a nonvolatile digital memory, a pressure transducer, an air port adapted for connecting the nasal cannula or facemask to the pressure transducer within the interface box, a fingertip pulse oximeter, and a processor adapted for collecting, measuring, digitizing, and storing collected data to the nonvolatile digital memory from the airflow, respiratory effort, blood oxygenation, and body position of the subject. *See supra* at ¶¶ 45-46.

106.    ApneaLink Air further comprises a transceiver adapted for uploading the collected data from the memory, and releasable connector sensor inputs adapted to electrically connect and disconnect the respiratory effort belt sensor and the fingertip pulse oximeter.  *See supra* at ¶¶ 45-50.

107.    The ApneaLink Software, AirView and Sleepifi contain a database that is remote from the subject and adapted for receiving the collected data transferring from the transceiver. *See supra* at ¶¶ 51-55; Ex. 27 at 18 (describing running the ApneaLink software to complete data transfer and analysis, and having a database containing collected data, including recordings and reports), *id.* at 20 (showing a database containing "[p]atient details, recordings, and reports"); *see also* Ex. 27 at 3 ("Test results from the ApneaLink Air are saved to a secure database in the cloud, giving your sleep lab online access anytime and improving collaboration across your business.").

108.    The ApneaLink Air Software, AirView, and Sleepifi automatically analyze the collected data from the database to identify and draw attention to physiological or technological events in the data indicative of a sleeping disorder.  *See supra* at ¶¶ 51-55; *see also* Ex. 27 at 41 (the ApneaLink software uses a number of "[a]nalysis indices" to further analyze the data, e.g. "apnea-hypopnea index," "risk indicator," "% Flow limited breaths without Sn (FL)," "$SpO_2$ evaluation period," "Oxygen Desaturation Index," "Pulse," and "Proportion of probable Cheyne-Stokes epochs."); Ex. 37 at 1-2 (AirView's report guide "outlines the types of reports that you can generate in . . . AirView" and describes common graphs used in the various AirView reports, including those showing "Usage, Leak, Events and $SpO_2$").

109.    The ApneaLink Air Software, AirView, and Sleepifi provide for further analysis and displaying and/or printing of the transferred collected data and/or the identified physiological

and technological events in the data at the remote location to determine whether the subject suffers from a sleeping disorder.  For example, the ApneaLink Software has a Re-analyze tool "that repeats the analysis of a recording based on the set analysis parameters" and "modif[ies] the report, the patient record or the records (waveform data)."  AirView also allows a user to customize the types of reports generated.  *See supra* ¶¶ 51-55; Ex. 27 at 21; Ex. 33 at 1-2.

110.    ResMed's infringement of the '535 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

111.    CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.  ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights.  ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

112.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '535 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV
**(Indirect Infringement of the '535 Patent)**

113.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

114.    CleveMed is informed and believes ResMed has induced infringement of at least Claim 15 of the '535 Patent under 35 U.S.C. § 271(b).  Further, CleveMed is informed and believes ResMed has also contributorily infringed at least Claim 8 of the '535 Patent under 35 U.S.C. § 271(c).

36

115.    CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology at least as early as November 2019, but certainly by June 2022. *See* ¶¶ 65-73.

116.    CleveMed is informed and believes ResMed has induced infringement of the '535 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, partners, purchasers, and users to provide one or more components of the article of manufacturing, either literally or under the doctrine of equivalents.  All the elements of the claims are used by either ResMed, its customers, partners, purchasers, and/or users or some combination thereof.  CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is inducing others to infringe by practicing, either themselves or in conjunction with ResMed, one or more claims of the '535 Patent, including Claim 15. *See supra* ¶¶ 36-40.

117.    CleveMed is informed and believes ResMed knowingly and actively aided and abetted the direct infringement of the '535 Patent by instructing and encouraging its customers, purchasers, partners, and/or users to meet the elements of the '535 Patent with the Accused Products, despite knowing or remaining willfully blind to the fact that the encouraged acts caused infringement.  Such instructions and encouragement include, but are not limited to, providing the HST Solutions to customers with instructions and guidance on using the Accused Products in an infringing manner, advising third parties to use the '535 Accused Products in an infringing manner through direct communications; training and support contracts, sales calls between ResMed employees and its customers; directing users, distributors, and partners how to install and configure the Accused Products; and by advertising and promoting the use of the '535 Accused Products in an infringing manner, including the material cited herein and above in the

direct infringement allegations.  Further, ResMed distributes user instructions, clinical guides, release notes, webinars, guidelines, videos, manuals, white papers, and trainings to third parties on how the '535 Accused Products must be used and shows them being used in an infringing manner.

118.    CleveMed is informed and believes ResMed contributorily infringes the '535 Patent pursuant to 35 U.S.C. § 271(c) because it has provided software such as AirView, ApneaLink Software, and Sleepifi, and computer systems with software installed such as the ApneaLink Air device, that act as a material component of the claims of the '535 Patent.  In particular, ResMed knows that its products are particularly suited to be used in an infringing manner and ResMed is aware that its products are not staple articles suitable for substantial non-infringing use.  CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is contributing to the direct infringement of one or more claims of the '535 Patent by its customers, partners, purchasers, and users, including Claim 15.

119.    In particular, ResMed has at least provided the '535 Accused Products to others as home sleep testing devices and computer technologies and these products are a material part and/or component of the claims of the '535 Patent.  ResMed knows that its products are particularly suited to be used on, or in combination with ResMed's HST Solutions and computer technologies and that these products are made and adapted for this use, even if some of these components are not sold by ResMed with, or as part of, the '535 Accused Products.  In fact, in many cases, the '535 Accused Products can only function when used with these computer technologies.  For example, ResMed markets the ApneaLink Air and ApneaLink Air Software together, stating "ApneaLink Air software provides clinicians access to a more in-depth view of their patients' recordings."  Ex. 17 at 2.  Further, ResMed markets the ApneaLink Air and

AirView together, stating, "[t]est results from the ApneaLink Air are saved to a secure database in the cloud [AirView] giving your sleep lab online access anytime and improving collaboration across your business."  Ex. 26 at 3. ResMed also advertises use of the ApneaLink Air as working with Sleepifi and VPOD VeriSleep.  *See supra* ¶¶ 38-40.

120.    CleveMed is informed and believes ResMed has knowingly and actively contributed to the direct infringement of the '535 Patent by its manufacture, use, offer to sell, sale, and importation of the '535 Accused Products together with its customers, partners, purchasers, and/or users to meet the elements of the '535 Patent, as described above and incorporated by reference here.

121.    ResMed's indirect infringement of the '535 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

122.    ResMed's indirect infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

123.    CleveMed is entitled to injunctive relief, damages and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285.

124.    ResMed has had knowledge of CleveMed's '535 Patent since at least as early June 2022, if not sooner.  *See* ¶¶ 65-73.  ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights.  ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

125.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '535 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

## COUNT V
### (Direct Infringement of the '937 Patent)

126.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

127.    ResMed has infringed and continues to infringe at least Claim 13 of the '937 Patent in violation of 35 U.S.C. § 271(a).

128.    ResMed's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

129.    ResMed's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of CleveMed.

130.    ResMed's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of ResMed's products and services incorporating the HST solution described in the '937 Patent, which includes, but is not limited to, the accused HST Solutions (the "'937 Accused Products").  To the extent any components of the claimed systems are provided by ResMed's customers, ResMed directly infringes by acting as the final assembler of the infringing system.  ResMed configures the infringing system that requires the use of the infringing components.  *See, e.g.,* Ex. 27 at 5-15; Ex. 35.

131.    CleveMed is informed and believes ResMed directs and controls the systems and methods in the claims and obtains benefits from the control of the system as a whole.  CleveMed is informed and believes ResMed conditions participation in the infringing activity and

establishes the manner or timing of that performance, as described below, by instructing and encouraging users to use the '937 Accused Products in an infringing manner. ResMed and its customers, partners, purchasers, and/or users put the article of manufacture and methods described in the claims into service to the benefit of ResMed's ability to further enhance its sleep therapy capabilities. *See*, *e.g.*, Ex. 20 at 1-2; Ex. 11.

132.    The '937 Accused Products embody the patented invention of the '937 Patent and infringe the '937 Patent because they function as a system for conducting a remote sleep analysis of a subject. For example, the ApneaLink Air device and Alice NightOne are a portable interface box adapted for connecting to (1) a nasal cannula or facemask adapted to be applied to a subject for measuring airflow; (2) a respiratory effort belt adapted to be applied to a subject for measuring respiratory effort; and (3) a fingertip pulse oximeter adapted to be applied to a subject, for measuring blood oxygenation and electrically connects to ApneaLink Air and Alice NightOne. *See supra* at ¶¶ 43-50, 56-60.

133.    ApneaLink Air and Alice NightOne comprise a battery, at least one kinetic sensor, a processor adapted for collecting, measuring, and digitizing data corresponding to the airflow, respiratory effort and blood oxygenation of the subject, and non-volatile memory for receiving and storing the data from the processor. *See supra* at ¶¶ 45-47, 57-60.

134.    ApneaLink Air and Alice NightOne comprise a transceiver adapted for uploading the collected data, releasable connector sensor inputs adapted to electrically connect and disconnect the respiratory effort belt and the fingertip pulse oximeter, and a sensor input adapted to electrically connect the fingertip pulse oximeter. *See supra* at ¶¶ 49-50, 61.

135.    ApneaLink Air and Alice NightOne have a pressure transducer that connects the nasal cannula or face mask via an air port.  *See supra* at ¶¶ 47, 59; *see also* Ex. 27 at 6 (describing a first pressure transducer (i.e. pressure sensor)'s ability to record a pressure change).

136.    The ApneaLink Software, AirView, and Sleepifi contain a database that is remote from the subject and adapted for receiving the collected data transferring from the transceiver. *See supra* ¶¶ 51-55, 62-64; Ex. 27 at 18 (describing running the ApneaLink software to complete data transfer and analysis, and having a database containing collected data, including recordings and reports), *id.* at 20 (showing a database containing "[p]atient details, recordings, and reports"); *see also* Ex. 26 at 3 ("Test results from the ApneaLink Air are saved to a secure database in the cloud, giving your sleep lab online access anytime and improving collaboration across your business.").

137.    ApneaLink Software, AirView, and Sleepifi are software programs that are stored on computer readable storage media and when executed by a computing device, automatically analyze the collected data from the database to identify and draw attention to physiological or technological events in the data indicative of a sleeping disorder.  *See supra* at ¶¶ 51-55, 62-64; *see also* Ex. 27 at 41 (the ApneaLink software uses a number of "[a]nalysis indices" to further analyze the data, e.g. "apnea-hypopnea index," "risk indicator," "% Flow limited breaths without Sn (FL)," "$SpO_2$ evaluation period," "Oxygen Desaturation Index," "Pulse," and "Proportion of probable Cheyne-Stokes epochs."); Ex. 37 at 1-2 (AirView's report guide "outlines the types of reports that you can generate in . . . AirView" and describes common graphs used in the various AirView reports, including those showing "Usage, Leak, Events and $SpO_2$").

138.    ApneaLink Software, AirView, and Sleepifi are additionally adapted for outputting at least: (i) the transferred collected data, (ii) the identified physiological and

technological events, or (iii) both (i) and (ii) to determine whether the subject suffers from a sleeping disorder.  *See supra* at ¶¶ 51-55, 62-64.

139.    ResMed's infringement of the '937 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

140.    CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.  ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights.  ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

141.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '937 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

## <u>COUNT VI</u>
### (Indirect Infringement of the '937 Patent)

142.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

143.    CleveMed is informed and believes ResMed has induced infringement of at least Claim 13 of the '937 Patent under 35 U.S.C. § 271(b).  Further, CleveMed is informed and believes ResMed has also contributorily infringed at least Claim 13 of the '937 Patent under 35 U.S.C. § 271(c).

144.    CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.

145.    CleveMed is informed and believes ResMed has induced infringement of the '937

Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including

its customers, partners, purchasers, and users to provide one or more components of the article of

manufacturing, either literally or under the doctrine of equivalents.  All the elements of the

claims are used by either ResMed, its customers, partners, purchasers, and/or users or some

combination thereof.  CleveMed is informed and believes ResMed has known or was willfully

blind to the fact that it is inducing others to infringe by practicing, either themselves or in

conjunction with ResMed, one or more claims of the '937 Patent, including Claim 13.  *See supra*

¶¶ 36-40.

146.    CleveMed is informed and believes ResMed knowingly and actively aided and

abetted the direct infringement of the '937 Patent by instructing and encouraging its customers,

purchasers, partners, and/or users to meet the elements of the '937 Patent with the '937 Accused

Products, despite knowing or remaining willfully blind to the fact that the encouraged acts

caused infringement.  Such instructions and encouragement include, but are not limited to,

providing the HST Solutions to customers with instructions and guidance on using the Accused

Products in an infringing manner, advising third parties to use the '937 Accused Products in an

infringing manner through direct communications; training and support contracts, sales calls

between ResMed employees and its customers; directing users, distributors, partners, and

manufacturers how to install and configure the Accused Products; and by advertising and

promoting the use of the '937 Accused Products in an infringing manner, including the material

cited herein and above in the direct infringement allegations.  Further, ResMed distributes user

instructions, clinical guides, release notes, webinars, guidelines, videos, manuals, white papers,

and trainings to third parties on how the '937 Accused Products must be used and shows them being used in an infringing manner.

147.    CleveMed is informed and believes ResMed contributorily infringes the '937 Patent pursuant to 35 U.S.C. § 271(c) because it has provided software such as AirView, ApneaLink Software, and Sleepifi, and computer systems with software installed such as the ApneaLink Air device and Alice NightOne, that act as a material component of the claims of the '937 Patent.  In particular, ResMed knows that its products are particularly suited to be used in an infringing manner and that ResMed is aware that its products are not staple articles suitable for substantial non-infringing use.  CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is contributing to the direct infringement of one or more claims of the '937 Patent by its customers, partners, purchasers, and users, including Claim 13.

148.    In particular, ResMed has at least provided the '937 Accused Products to others as home sleep testing devices and computer technologies and these products are a material part and/or component of the claims of the '937 Patent.  ResMed knows that its products are particularly suited to be used on, or in combination with ResMed's HST Solutions and computer technologies and that these products are made and adapted for this use, even if some of these components are not sold by ResMed with, or as part of, the '937 Accused Products.  In fact, in many cases, the '937 Accused Products can only function when used with these computer technologies.  For example, ResMed markets the ApneaLink Air and ApneaLink Air Software together, stating "ApneaLink Air software provides clinicians access to a more in-depth view of their patients' recordings."  Ex. 17 at 2.  Further, ResMed markets the ApneaLink Air and AirView together, stating, "[t]est results from the ApneaLink Air are saved to a secure database in the cloud [AirView] giving your sleep lab online access anytime and improving collaboration

across your business." Ex. 26 at 3. ResMed also advertises use of the ApneaLink Air and Alice NightOne as working with Sleepifi and VPOD VeriSleep. *See supra* ¶¶ 38-40.

149.    CleveMed is informed and believes ResMed has knowingly and actively contributed to the direct infringement of the '937 Patent by its manufacture, use, offer to sell, sale, and importation of the '937 Accused Products together with its customers, partners, purchasers, and/or users to meet the elements of the '937 Patent, as described above and incorporated by reference here.

150.    ResMed's indirect infringement of the '937 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

151.    ResMed's indirect infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

152.    CleveMed is entitled to injunctive relief, damages and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285.

153.    ResMed has had knowledge of CleveMed's '937 Patent since at least June 2022, if not sooner. *See* ¶¶ 65-73. ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights. ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

154.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '937 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

## COUNT VII
### (Direct Infringement of the '698 Patent)

155.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

156.    ResMed has infringed and continues to infringe at least Claim 14 of the '698 Patent in violation of 35 U.S.C. § 271(a).

157.    ResMed's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

158.    ResMed's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of CleveMed.

159.    ResMed's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of ResMed's products and services incorporating the HST solution described in the '698 Patent, which includes, but is not limited to, the accused HST Solutions (the "'698 Accused Products").

160.    CleveMed is informed and believes ResMed directs and controls the methods in the claims and obtains benefits from the control of the method as a whole.  CleveMed is informed and believes ResMed conditions participation in the infringing activity and establishes the manner or timing of that performance, as described below, by instructing and encouraging users to use the '698 Accused Products in an infringing manner.  ResMed and its customers, partners, purchasers, and/or users put the article of manufacture and methods described in the claims into service to the benefit of ResMed's ability to further enhance its sleep therapy capabilities.  *See, e.g.*, Ex. 20 at 1-2; Ex. 11.

161.    The '698 Accused Products embody the patented invention of the '698 Patent and infringe the '698 Patent because they function as a method of remote sleep analysis and diagnosis.  For example, ResMed instructs subjects to apply at least two sensors to a subject located in a facility remote to a sleep analysis unit or lab, the at least two sensors including a respiratory belt sensor and an airflow sensor, the respiratory belt sensor being electrically hardwired and releasably connected to the ApneaLink Air and Alice NightOne devices which are portable interface boxes worn or carried by the subject, and the airflow sensor internal to the same interface box is adapted to be applied to the subject through a nasal cannula or breathing mask.  *See supra* at ¶¶ 43-49, 56-60.

162.    ApneaLink Air and Alice NightOne connect directly to both the respiratory effort sensor and the nasal cannula.  *See supra* at ¶¶ 47, 59.

163.    ApneaLink Air and Alice NightOne comprise a memory device, a battery, and electronics, which are programmed to collect and transmit data to an electronic interface for receiving the data for review by medical personnel.  *See supra* at ¶ 46 (showing ApneaLink Air has internal memory, a battery, and electronics (*i.e.* "enhanced hardware," sensors) that collect data); *id.* at ¶ 50 (showing ApneaLink Air has a transceiver to transmit data to an electronic interface); *id.* at ¶¶ 58-61.

164.    ApneaLink Air and Alice NightOne transmit the data collected on the device to an electronic interface (i.e. the computer running the ApneaLink Software, AirView and/or Sleepifi) for receiving the data for review by health care professionals.  *See supra* at ¶¶ 50-55, 61-64.

165.    ApneaLink Air and Alice NightOne also collect data in real-time from the respiratory effort sensor (belt) and the air flow sensor and store the data on the memory device.  *See supra* at ¶¶ 46-49, 58-60.

166.    ApneaLink Air and Alice NightOne transmit the data from the device to the electronic interface at a sleep unit, lab, or a database accessible to health care professionals running ApneaLink Software, AirView, and/or Sleepifi.  *See supra* at ¶ 50, 61.

167.    ApneaLink Software, AirView, and Sleepifi are software that runs on a computer and identifies and draws attention to physiological or technological events in the data.  *See supra* at ¶¶ 51-55, 62-64.

168.    ApneaLink Software, AirView, and Sleepifi provide further analysis of the transmitted data and the identified physiological and technological events to medically diagnose whether a subject suffers from a sleep disorder.  For example, the ApneaLink Software has a Re-analyze tool "that repeats the analysis of a recording based on the set analysis parameters" and "modif[ies] the report, the patient record or the records (waveform data)."  AirView also allows a user to customize the types of reports generated.  *See supra* ¶¶ 51-55, 62-64; Ex. 27 at 21; Ex. 33 at 1-2.

169.    Through ApneaLink Software, AirView, and Sleepifi the diagnosis can be communicated to the subject.  *See supra* at ¶¶ 51-55, 62-64.

170.    ResMed's infringement of the '698 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

171.    CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology since at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.  ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights.  ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

172.     ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '698 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

**COUNT VIII**
**(Indirect Infringement of the '698 Patent)**

173.     CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

174.     CleveMed is informed and believes ResMed has induced infringement of at least Claim 14 of the '698 Patent under 35 U.S.C. § 271(b).  Further, CleveMed is informed and believes ResMed has also contributorily infringed at least Claim 14 of the '698 Patent under 35 U.S.C. § 271(c).

175.     CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology since at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.

176.     CleveMed is informed and believes ResMed has induced infringement of the '698 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, partners, purchasers, and users to perform one or more of the steps of the method claims either literally or under the doctrine of equivalents.  All the elements of the claims are used by either ResMed, its customers, partners, purchasers, and/or users or some combination thereof.  CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is inducing others to infringe by practicing, either themselves or in conjunction with ResMed, one or more claims of the '698 Patent, including Claim 14.  *See supra* ¶¶ 36-40.

177.     CleveMed is informed and believes ResMed knowingly and actively aided and abetted the direct infringement of the '698 Patent by instructing and encouraging its customers,

purchasers, partners, and/or users to meet the elements of the '698 Patent with the '698 Accused Products, despite knowing or remaining willfully blind to the fact that the encouraged acts caused infringement.  Such instructions and encouragement included, but is not limited to, providing the HST Solutions to customers with instructions and guidance on using the Accused Products in an infringing manner, advising third parties to use the '698 Accused Products in an infringing manner through direct communications; training and support contracts, sales calls between ResMed employees and its customers; directing users, distributors, partners, and manufacturers how to install and configure the Accused Products; and by advertising and promoting the use of the '698 Accused Products in an infringing manner, including the material cited herein and above in the direct infringement allegations.  Further, ResMed distributes user instructions, clinical guides, release notes, webinars, guidelines, videos, manuals, white papers, and trainings to third parties on how the '698 Accused Products must be used and shows them being used in an infringing manner.

178.    CleveMed is informed and believes ResMed contributorily infringes the '698 Patent pursuant to 35 U.S.C. § 271(c) because it has provided software such as AirView, ApneaLink Software, and Sleepifi, as well as computer systems with software installed such as the ApneaLink Air device and the Alice NightOne, that act as a material component of the claims of the '698 Patent.  In particular, ResMed knows that its products are particularly suited to be used in an infringing manner and that ResMed is aware that its products are not staple articles suitable for substantial non-infringing use.  CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is contributing to the direct infringement of one or more claims of the '698 Patent by its customers, partners, purchasers, and users, including Claim 14.

179.    In particular, ResMed has at least provided the '698 Accused Products to others as home sleep testing devices and computer technologies and these products are a material part and/or component of the claims of the '698 Patent.  ResMed knows that its products are particularly suited to be used on, or in combination with ResMed's HST Solutions and computer technologies and that these products are made and adapted for this use, even if some of these components are not sold by ResMed with, or as part of, the '698 Accused Products.  In fact, in many cases, the '698 Accused Products can only function when used with these computer technologies.  For example, ResMed markets the ApneaLink Air and ApneaLink Air Software together, stating "ApneaLink Air software provides clinicians access to a more in-depth view of their patients' recordings."  Ex. 17 at 2.  Further, ResMed markets the ApneaLink Air and AirView together, stating, "[t]est results from the ApneaLink Air are saved to a secure database in the cloud [AirView] giving your sleep lab online access anytime and improving collaboration across your business."  Ex. 26 at 3.  ResMed also advertises use of the ApneaLink Air and Alice NightOne as working with Sleepifi and VPOD VeriSleep.  *See supra* ¶¶ 38-40.

180.    CleveMed is informed and believes ResMed has knowingly and actively contributed to the direct infringement of the '698 Patent by its manufacture, use, offer to sell, sale, and importation of the '698 Accused Products together with its customers, partners, purchasers, and/or users to meet the elements of the '698 Patent, as described above and incorporated by reference here.

181.    ResMed's indirect infringement of the '698 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

182.    ResMed's indirect infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

183.    CleveMed is entitled to injunctive relief, damages and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285.

184.    ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights.  ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

185.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '698 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

**COUNT IX**
**(Direct Infringement of the '603 Patent)**

186.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

187.    ResMed has infringed and continues to infringe at least Claim 8 of the '603 Patent in violation of 35 U.S.C. § 271(a).

188.    ResMed's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

189.    ResMed's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of CleveMed.

190.     ResMed's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of ResMed's products and services incorporating the HST solution described in the '603 Patent, which includes, but is not limited to, the accused HST Solutions (the "'603 Accused Products").

191.     CleveMed is informed and believes ResMed directs and controls the systems and methods in the claims and obtains benefits from the control of the system as a whole.  CleveMed is informed and believes ResMed conditions participation in the infringing activity and establishes the manner or timing of that performance, as described below, by instructing and encouraging users to use the '603 Accused Products in an infringing manner.  ResMed and its customers, partners, purchasers, and/or users put the article of manufacture and methods described in the claims into service to the benefit of ResMed's ability to further enhance its sleep therapy capabilities.  *See*, *e.g.*, Ex. 20 at 1-2; Ex. 11.

192.     To the extent any components of the claimed systems are provided by ResMed's customers, ResMed directly infringes by acting as the final assembler of the infringing system.  ResMed configures the infringing system that requires the use of the infringing components.  *See, e.g.,* Ex. 27 at 5-15; Ex. 35.

193.     The '603 Accused Products embody the patented invention of the '603 Patent and infringe the '603 Patent because they function as a sleep diagnostic system.  For example, the ApneaLink Air device and Alice NightOne are portable, wearable patient interface boxes that are worn by the subject during a sleep test.  *See supra* at ¶¶ 43, 56.

194.     ApneaLink Air and Alice NightOne comprise a battery, nonvolatile digital memory, electronics including at least three input channels programmed to receive collected data in real-time from at least three sensors at a remote sleep location in the nonvolatile digital

memory, and at least two sensor connectors adapted to electrically connect the at least three sensors directly to the at least three input channels of the portable, wearable interface box.  *See supra* at ¶¶ 43-48, 56-60.

195.    ApneaLink Air and Alice NightOne have a transceiver to upload the collected data to the database, the database adapted to operate at a first location which is different from the remote sleep location where the subject is tested.  *See supra* at ¶¶ 50-55, 61-64.

196.    ApneaLink Air and Alice NightOne have at least three sensors consisting of: a fingertip pulse oximeter, a pressure sensor, and transducers.  *See supra* at ¶¶ 45-48, 57-60.

197.    ApneaLink Air's and Alice NightOne's three sensors are adapted to be applied to a finger and a torso of the subject tested during sleep while located in a remote sleep location to measure or derive at least the subject's respiratory effort, snore and bloody oxygenation during testing.  *See supra* at ¶¶ 45-48, 57-60.

198.    The at least three sensors are also electrically hardwired and/or releasable connected to the three input channels on the interface box worn by the subject.  *See supra* at ¶¶ 45-48, 57-60.

199.    ApneaLink Software, AirView, and Sleepifi contain databases, accessible to individuals from the sleep analysis unit or lab that receive the data collected from the ApneaLink Air's or Alice NightOne's memory and uploaded to the database by the transceiver.  *See supra* at ¶¶ 51-55, 62-64; *see also* Ex. 27 at 18 (describing running the ApneaLink software to complete data transfer and analysis, and having a database containing collected data, including recordings and reports), *id.* at 20 (showing a database containing "[p]atient details, recordings, and reports"); *see also* Ex. 26 at 3 ("Test results from the ApneaLink Air are saved to a secure

database in the cloud, giving your sleep lab online access anytime and improving collaboration across your business."); Ex. 31 (showing the medical interpretation report).

200.    ApneaLink Software, AirView, and Sleepifi are software that run on a computer or processor adapted to operate at the first or a second location other than the remote sleep location and automatically analyzes the received data to identify and draw attention to physiological events indicative of a sleeping disorder in one or more of the respiratory effort, snore and blood oxygenation from the data.  *See supra* at ¶¶ 51-55, 62-64; *see also* Ex. 27 at 21; Ex. 33 at 1-2.

201.    ApneaLink Software, AirView, and Sleepifi also consists of a two-way communication link adapted output the i) respiratory effort, snore and blood oxygenation data from the database, ii) the identified and quantified physiological events in the data, or both i) and ii) in a form adapted for a professional medical diagnosis of whether the subject suffers from a sleeping disorder.  *See supra* at ¶¶ 51-55, 62-64.

202.    ResMed's infringement of the '603 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

203.    CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology since at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.  ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights.  ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

204.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '603 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

**COUNT X**
**(Indirect Infringement of the '603 Patent)**

205.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

206.    CleveMed is informed and believes ResMed has induced infringement of at least Claim 1 of the '603 Patent under 35 U.S.C. § 271(b).  Further, CleveMed is informed and believes ResMed has also contributorily infringed at least Claim 8 of the '603 Patent under 35 U.S.C. § 271(c).

207.    CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology since at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.

208.    CleveMed is informed and believes ResMed has induced infringement of the '603 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, partners, purchasers, and users to provide one or more components of the article of manufacturing, either literally or under the doctrine of equivalents.  All elements of the claims are used by either ResMed, its customers, partners, purchasers, and users, or some combination thereof.  CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is inducing others to infringe by practicing, either themselves or in conjunction with ResMed, one or more claims of the '603 Patent, including Claim 1.  *See supra* ¶¶ 36-40.

209.    CleveMed is informed and believes ResMed knowingly and actively aided and abetted the direct infringement of the '603 Patent by instructing and encouraging its customers,

purchasers, partners, and/or users to meet the elements of the '603 Patent with the '603 Accused Products, despite knowing or remaining willfully blind to the fact that the encouraged acts caused infringement. Such instructions and encouragement include, but are not limited to, providing the HST Solutions to customers with instructions and guidance on using the Accused Products in an infringing manner, advising third parties to use the '603 Accused Products in an infringing manner through direct communications; training and support contracts, sales calls between ResMed employees and its customers; directing users, distributors, partners, and manufacturers how to install and configure the Accused Products; and by advertising and promoting the use of the '603 Accused Products in an infringing manner, including the material cited herein and above in the direct infringement allegations. Further, ResMed distributes user instructions, clinical guides, release notes, webinars, guidelines, videos, manuals, white papers, and trainings to third parties on how the '603 Accused Products must be used and shows them being used in an infringing manner.

210.    CleveMed is informed and believes ResMed contributorily infringes the '603 Patent pursuant to 35 U.S.C. § 271(c) because it has provided software such as AirView, ApneaLink Software, and Sleepifi as well as computer systems with software installed such as the ApneaLink Air device and Alice NightOne, that act as a material component of the claims of the '603 Patent. In particular, ResMed knows that its products are particularly suited to be used in an infringing manner and that ResMed is aware that its products are not staple articles suitable for substantial non-infringing use. CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is contributing to the direct infringement of one or more claims of the '603 Patent by its customers, partners, purchasers, and users, including Claim 1.

211.    In particular, ResMed has at least provided the '603 Accused Products to others as home sleep testing devices and computer technologies and these products are a material part and/or component of the claims of the '603 Patent.  ResMed knows that its products are particularly suited to be used on, or in combination with ResMed's HST Solutions and computer technologies and that these products are made and adapted for this use, even if some of these components are not sold by ResMed with, or as part of, the '603 Accused Products.  In fact, in many cases, the '603 Accused Products can only function when used with these computer technologies.  For example, ResMed markets the ApneaLink Air and ApneaLink Air Software together, stating "ApneaLink Air software provides clinicians access to a more in-depth view of their patients' recordings."  Ex. 17 at 2.  Further, ResMed markets the ApneaLink Air and AirView together, stating, "[t]est results from the ApneaLink Air are saved to a secure database in the cloud [AirView] giving your sleep lab online access anytime and improving collaboration across your business."  Ex. 26 at 3.  ResMed also advertises use of the ApneaLink Air and Alice NightOne as working with Sleepifi and VPOD VeriSleep.  *See supra* ¶¶ 38-40.

212.    CleveMed is informed and believes ResMed has knowingly and actively contributed to the direct infringement of the '603 Patent by its manufacture, use, offer to sell, sale, and importation of the '603 Accused Products together with its customers, partners, purchasers, and/or users to meet the elements of the '603 Patent, as described above and incorporated by reference here.

213.    ResMed's indirect infringement of the '603 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

214.    ResMed's indirect infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

215.    CleveMed is entitled to injunctive relief, damages and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285.

216.    ResMed has had knowledge of CleveMed's '399 Patent since at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.  ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights.  ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

217.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '603 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

## COUNT XI
### (Direct Infringement of the '637 Patent)

218.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

219.    ResMed has infringed and continues to infringe at least Claim 1 of the '637 Patent in violation of 35 U.S.C. § 271(a).

220.    ResMed's infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

221.   ResMed's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of CleveMed.

222.   ResMed's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of ResMed's products and services incorporating the HST solution described in the '637 Patent, which includes, but is not limited to, the accused ApneaLink Air Solution (the "'637 Accused Products").

223.   CleveMed is informed and believes ResMed directs and controls the systems and methods in the claims and obtains benefits from the control of the system as a whole.  CleveMed is informed and believes ResMed conditions participation in the infringing activity and establishes the manner or timing of that performance, as described below, by instructing and encouraging users to use the '637 Accused Products in an infringing manner.  ResMed and its customers, partners, purchasers, and/or users put the article of manufacture and methods described in the claims into service to the benefit of ResMed's ability to further enhance its sleep therapy capabilities.  *See*, *e.g.*, Ex. 20 at 1-2; Ex. 11.

224.   To the extent any components of the claimed systems are provided by ResMed's customers, ResMed directly infringes by acting as the final assembler of the infringing system. ResMed configures the infringing system that requires the use of the infringing components. *See, e.g.,* Ex. 27 at 5-15; Ex. 35.

225.   The '637 Accused Products embody the patented invention of the '637 Patent and infringe the '637 Patent because they are a system for conducting a home sleep analysis of a subject.  For example, the ApneaLink Air device is a portable patient interface box that connects with a snore sensor and/or a nasal cannula that is worn by the subject, a respiratory effort sensor

attached to a belt that is worn by the subject and measures respiratory effort, and a fingertip pulse oximeter that is applied to the subject's fingertip and measures blood oxygenation of the subject. *See supra* at ¶¶ 43-49.

226.    The ApneaLink Air device additionally has a kinetic sensor that measures body position. *See supra* at ¶ 49.

227.    The ApneaLink Air device also has a wearable portable interface box that connects to a nasal cannula, the respiratory effort sensor, and the fingertip pulse oximeter. *See supra* at ¶¶ 43-48.

*228.*    The ApneaLink Air device comprises a processor, memory, battery, a transceiver or transmitter, first and second pressure transducers, a first air port for connecting the nasal cannula to the first pressure transducer, and a second air port for connecting respiratory effort belt to the second pressure transducer. *See supra* at ¶¶ 44-48.

229.    The ApneaLink Air device obtains airflow and/or snore data from the snore sensor and/or the airflow sensor for the nasal cannula, respiratory effort data from the output of the respiratory effort sensor, blood oxygenation data from the output of the fingertip pulse oximeter, and body position or orientation data from the kinetic sensor. *See supra* at ¶ 49.

230.    The ApneaLink Air device further consists of a transceiver to upload the obtained data to a remote database for analysis by a software stored on a processor. *See supra* at ¶¶ 50-55.

231.    The ApneaLink Software, AirView, and Sleepifi are software that is stored on a processor and configured to automatically analyze the obtained data to identify one or more physiological or technological indicative of a sleeping disorder. *See supra* at ¶¶ 51-55; *see also* Ex. 27 at 21; Ex. 33 at 1-2.

232.    ApneaLink Air Software, AirView, and Sleepifi are additionally adapted for outputting at least: (i) one or more of the airflow data, snore data, respiratory effort data, blood oxygenation data, and body position data, and/or (ii) the identified physiological and technological events, to facilitate a determination as to whether the subject suffers from a sleeping disorder.  *See supra* at ¶¶ 51-55.

233.    ResMed's infringement of the '637 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

234.    CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology since at least as early as November 2019, but certainly by June 2022.  *See* ¶¶ 65-73.  ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights.  ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

235.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '637 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

## <u>COUNT XII</u>
### (Indirect Infringement of the '637 Patent)

236.    CleveMed repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

237.    CleveMed is informed and believes ResMed has induced infringement of at least Claim 1 of the '637 Patent under 35 U.S.C. § 271(b).  Further, CleveMed is informed and believes ResMed has also contributorily infringed at least Claim 1 of the '637 Patent under 35 U.S.C. § 271(c).

238.     CleveMed is informed and believes ResMed has had knowledge of CleveMed's patented technology at least as early as November 2019, but certainly by June 2022. *See* ¶¶ 65-73.

239.     CleveMed is informed and believes ResMed has induced infringement of the '637 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, partners, purchasers, and users to provide one or more components of the article of manufacturing, either literally or under the doctrine of equivalents. All elements of the claims are used by either ResMed, its customers, partners, purchasers, and users, or some combination thereof. CleveMed is informed and believes ResMed has known or was willfully blind to the fact that it is inducing others to infringe by practicing, either themselves or in conjunction with ResMed, one or more claims of the '637 Patent, including Claim 1. *See supra* ¶¶ 36-40.

240.     CleveMed is informed and believes ResMed knowingly and actively aided and abetted the direct infringement of the '637 Patent by instructing and encouraging its customers, purchasers, partners, and/or users to meet the elements of the '637 Patent with the '637 Accused Products, despite knowing or remaining willfully blind to the fact that the encouraged acts caused infringement. Such instructions and encouragement include, but are not limited to, providing the HST Solutions to customers with instructions and guidance on using the Accused Products in an infringing manner, advising third parties to use the '637 Accused Products in an infringing manner through direct communications; training and support contracts, sales calls between ResMed employees and its customers; directing users, distributors, partners, and manufacturers how to install and configure the Accused Products; and by advertising and promoting the use of the '637 Accused Products in an infringing manner, including the material cited herein and above in the direct infringement allegations. Further, ResMed distributes user

instructions, clinical guides, release notes, webinars, guidelines, videos, manuals, white papers, and trainings to third parties on how the '637 Accused Products must be used and shows them being used in an infringing manner.

241.    CleveMed is informed and believes ResMed contributorily infringes the '637 Patent pursuant to 35 U.S.C. § 271(c) because it has provided software such as AirView, ApneaLink Software, and Sleepifi as well as computer systems with software installed such as the ApneaLink Air device, that act as a material component of the claims of the '637 Patent.  In particular, ResMed knows that its products are particularly suited to be used in an infringing manner and that ResMed is aware that its products are not staple articles suitable for substantial non-infringing use.  ResMed has known or was willfully blind to the fact that it is contributing to the direct infringement of one or more claims of the '637 Patent by its customers, partners, purchasers, and users, including Claim 1.

242.    In particular, ResMed has at least provided the '637 Accused Products to others as home sleep testing devices and computer technologies and these products are a material part and/or component of the claims of the '637 Patent.  ResMed knows that its products are particularly suited to be used on, or in combination with ResMed's HST device and computer technologies and that these products are made and adapted for this use, even if some of these components are not sold by ResMed with, or as part of, the '637 Accused Products.  In fact, in many cases, the '637 Accused Products can only function when used with these computer technologies.  For example, ResMed markets the ApneaLink Air and ApneaLink Air Software together, stating "ApneaLink Air software provides clinicians access to a more in-depth view of their patients' recordings."  Ex. 17 at 2.  Further, ResMed markets the ApneaLink Air and AirView together, stating, "[t]est results from the ApneaLink Air are saved to a secure database

in the cloud [AirView] giving your sleep lab online access anytime and improving collaboration across your business." Ex. 26 at 3. ResMed also advertises use of the ApneaLink Air as working with Sleepifi and VPOD VeriSleep. *See supra* ¶¶ 38-40.

243.    CleveMed is informed and believes ResMed has knowingly and actively contributed to the direct infringement of the '637 Patent by its manufacture, use, offer to sell, sale, and importation of the '637 Accused Products together with its customers, partners, purchasers, and/or users to meet the elements of the '637 Patent, as described above and incorporated by reference here.

244.    ResMed's indirect infringement of the '637 Patent has injured and continues to injure CleveMed in an amount to be proven at trial, but not less than a reasonable royalty.

245.    ResMed's indirect infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

246.    CleveMed is entitled to injunctive relief, damages and any other relief in accordance with 35 U.S.C. §§ 283, 284, and 285.

247.    ResMed has had knowledge of CleveMed's '637 Patent since at least as early as June 2022. *See* ¶¶ 65-73. ResMed's actions are willful, blatant and in egregious disregard for CleveMed's patent rights. ResMed's infringement has caused and is continuing to cause damage and irreparable injury to CleveMed, and CleveMed will continue to suffer damage and irreparable injury unless and until such infringement is enjoined by this Court.

248.    ResMed recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '637 Patent, justifying an award to CleveMed of increased damages under 35 U.S.C. § 284, and attorney's fees and costs incurred under 35 U.S.C. § 285.

**DEMAND FOR JURY TRIAL**

249.    CleveMed demands a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, CleveMed prays for judgment and relief as follows:

A.    An entry of judgment holding that ResMed has infringed and is infringing the '399, '535, '937, '698, '603, and '637 Patents; and has induced infringement and is inducing infringement of the '399, '535, '937, '698, '603, and '637 Patents; and/or has contributorily infringed and continues to contribute to infringement of the '399, '535, '937, '698, '603, and '637 Patents.

B.    A preliminary and permanent injunction against ResMed and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, enjoining them from infringing, or inducing the infringement of the '399, '535, '937, '698, '603, and '637 Patents and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.    An award to CleveMed of such damages as it shall prove at trial against ResMed that is adequate to fully compensate CleveMed for ResMed's infringement of the '399, '535, '937, '698, '603, and '637 Patents said damages to be no less than a reasonable royalty;

D.    An award to CleveMed of increased damages under 35 U.S.C. § 284, including a finding that ResMed willfully infringed the '399, '535, '937, '698, '603, and '637 Patents;

E.    A finding that this case is "exceptional" and an award to CleveMed of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

F.    An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of the '399, '535, '937, '698, '603, and '637 Patents; and

G.      Such further and other relief as the Court may deem proper and just.


                                        POTTER, ANDERSON & CORROON LLP

OF COUNSEL:

Paul J. Andre                           By: */s/ Philip A. Rovner*
Lisa Kobialka                               Philip A. Rovner (#3215)
James Hannah                                Nicole K. Pedi (#6236)
HERBERT SMITH FREEHILLS                     Hercules Plaza
KRAMER (US) LLP                             1313 North Market Street, 6th Floor
333 Twin Dolphin Drive                      P.O. Box 951
Redwood Shores, CA  94065                   Wilmington, Delaware 19801
(650) 752-1700                              provner@potteranderson.com
paul.andre@hsfkramer.com                    npedi@potteranderson.com
lisa.kobialka@hsfkramer.com
james.hannah@hsfkramer.com              *Attorneys for Plaintiff*
                                        *Cleveland Medical Devices Inc.*

Dated:  November 5, 2025